**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-250** |
| **LATONIA REED** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Latonia Reed used her position as a public employee and guardian of public funds to steal financial assistance for the benefit of her boyfriend. While she did not put the money in her own pocket, she nonetheless used it for the selfish purpose of enriching and pleasing someone close to her. Specifically, while defendant Reed worked at the Philadelphia Housing Development Corporation, she pushed through rental assistance applications using fake tenant names and documentation that she invented, forged the fake tenant signatures, and caused the assistance funds paid by the City of Philadelphia for the fake tenants to be paid to her boyfriend's bank account. For these reasons, as well as for the reasons provided below, the government recommends a sentence within the advisory Guideline range that includes a significant community service requirement, to repay the residents of Philadelphia for the harm she has caused them.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2026).

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a

ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory Guideline range and of the Section 3553(a) factors.

## I. BACKGROUND

On June 2, 2026, the United States Attorney's Office filed a one count information charging the defendant with wire fraud, in violation of 18 U.S.C. § 1343. On June 18, 2026, pursuant to the terms of a written guilty plea agreement, the defendant pled guilty to Count One of the information. During her guilty plea colloquy, the defendant admitted the following:

Beginning in 2021, defendant Reed worked as a financial specialist and program analyst at the Philadelphia Housing Development Corporation ("PHDC") in Philadelphia. The PHDC was a community development organization dedicated to the residents and neighborhoods in Philadelphia. The PHDC offered a variety of housing assistance to Philadelphians, including rental assistance, grants to first-time home buyers, investments in neighborhood preservation projects, loans to landlords to make improvements to affordable housing units, free adaptations to homes and apartments for low-income Philadelphians with permanent physical disabilities, and funding

for affordable housing development projects. The defendant's job duties included scheduling payments and resolving payment issues for one of PHDC's housing assistance programs.

Between July 10, 2024, and February 2025, while she worked at the PHDC, the defendant carried out a scheme to defraud the City of Philadelphia and the PHDC by submitting false housing assistance applications for the benefit of an individual referred to here as "Person 1." Defendant Reed circumvented ordinary PHDC procedures, which required another PHDC employee to review and approve applicants for the assistance program, and she accessed the intake side of the PHDC computer application to approve a business controlled by Person 1 as a participant in the program. She used that business name as the purported landlord name on assistance applications in order to conceal the name of the true beneficiary of funds, Person 1. Defendant Reed then drafted, submitted, and approved four false housing assistance applications, which resulted in payments to Person 1 totaling approximately $14,400. Reed completed each of the applications with false information, including the names and phone numbers of fake tenants. Reed also created bogus supporting documents, such as a rent ledger which purported to show the dates and amounts of rent payments and arrears for tenants she knew to be fake. Reed also forged the signatures of the fake tenants on agreements, affidavits, and notices submitted with the four fraudulent assistance applications.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The maximum sentence that may be imposed on the defendant is 20 years of imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment. Full restitution of as much as $14,400 also shall be ordered.

### B. Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory Guideline range as follows: The base offense level is 7, pursuant to U.S.S.G. § 2B1.1(a)(1). PSR ¶ 27. Given that the loss amount was more than $9,000 but less than $20,000, a two-level upward adjustment applies pursuant to § 2B1.1(b)(1)(B). PSR ¶ 28. Reed is entitled to a two-level downward adjustment for acceptance of responsibility pursuant to § 3E1.1(a). PSR ¶ 34. She is also eligible for a two-level reduction for being a zero-point offender, pursuant to § 4C1.1. PSR ¶ 33. The resulting offense level is 5. She has zero criminal history points, placing her in Criminal History Category I. At a 5-I, her advisory Guideline range is zero to six months of incarceration in Zone A of the Sentencing Table.

The government and the defendant lodged the same objection to the Presentence Report. *See* Addendum to the PSR. The parties agreed pursuant to the terms of the guilty plea agreement that the defendant's Guideline range should be calculated using the actual loss amount of $14,400. The Probation Office determined that the Guideline loss amount was a few thousand dollars higher because it included intended loss – that is, the amount of assistance in an application the defendant submitted in February 2025 that was denied, and not paid, by the PHDC. Whether the Court determines that the loss amount is $14,400, the amount the government believes is appropriate, or the amount applied by the Probation Office, which is still below $20,000, it has no impact on the

Guideline calculation because both figures fall within the same Guideline loss range and result in a two-level upward adjustment.

## III. ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the Guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

The defendant engaged in a serious offense that siphoned public funds away from others in need. She committed her crime as an adult and with significant premeditation, planning, and effort to hide. It is clear that she knew it was wrong at the time because she tried to conceal it. The harm from the defendant's criminal conduct extends beyond just financial loss. It fundamentally impacts all Philadelphians. Housing assistance funds, like other public assistance, came from taxpayers and were intended to serve community needs. When public employees like the defendant use those funds for the benefit of themselves and others close to them, it erodes public trust that government is working for the benefit of all. The seriousness of the defendant's crime is heightened because it diverted funds from a vulnerable population, that is, those who were housing insecure and could have benefited from City rental assistance.

It is precisely because of the societal harm caused by defendant Reed's crime that the government requests that the Court include public service as a term of the defendant's sentence. A sentence within the advisory Guideline range that includes a public service requirement will serve "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." § 3553(a)(2). Furthermore, the recommended sentence affords adequate deterrence to others who would commit a similar offense. *Id.*

A sentence within the advisory Guidelines range assures that the defendant's sentence is consistent with those imposed nationwide, thus complying with Section 3553(a)(6) and avoiding undue disparity.

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-Guideline sentence that includes a public service requirement. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

## IV. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a sentence within the Guideline range that includes a significant community service requirement is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*s/ Nancy E. Potts*
NANCY E. POTTS
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Katrina Young
Defender Association of Philadelphia
Federal Court Division
The Curtis Center Building
601 Walnut Street, Suite 540 West
Independence Square West
Philadelphia, PA 19106
Katrina_Young@fd.org

*s/ Nancy E. Potts*
NANCY E. POTTS
Assistant United States Attorney

Date: November 5, 2026